## SKRMETTI v. ANDERSON et ux.
### No. 506.

District Court, S. D. Mississippi, S. D.
May 1, 1939.

Mize, Thompson & Mize, of Gulfport, Miss., for complainant.

W. L. Guice, of Biloxi, Miss., for defendants.

WATSON, District Judge.

Paul M. Skrmetti, the Plaintiff and owner of Patent No. 1,498,760 and Patent No. 1,485,338, by this suit seeks a decree against Albert Anderson and Anna Anderson adjudging their manufacturing and use of a certain floating trawling fish seine to be an infringement of his patents and awarding an injunction. The Defendants challenge the validity of the Skrmetti patents and deny infringement.

This is not a case in which the question as to the validity of the patents in suit needs to be discussed or passed upon, but, as I view the matter, the finding to be made upon the issue of infringement is determinative of the decree to be entered. Consequently, it may be here assumed without deciding that Plaintiff's patents are valid.

In 1917, Paul M. Skrmetti, the Plaintiff, while in California, attempted to improve on the fishing nets then in use and invented certain improvements on floating trawls.

In 1922, he applied for patents upon these improvements and after many rejections his application was accepted and Letters Patent were granted to him in 1924. The Defendant, Albert Anderson, in 1914, in Mississippi, made fishing trawls for his own use as well as those for the use of other fishermen in that vicinity. The trawl which Anderson made in 1914 is essentially the same as that which Skrmetti claims infringes upon his patents. Prior to 1920, these trawls, such as those made and used by Anderson, had achieved wide popularity and thousands of them were in use along the southeastern coast of the United States. In 1928, Skrmetti informed Anderson that his trawl was an infringement of his patents. In 1928, Anderson and his wife, the other Defendant, entered into the business of manufacturing the trawls.

The determination of the issue to be decided in this case is not difficult, but in view of the time and labor spent by counsel in preparing and presenting the case and the great number of persons who will be affected by the decision to be made, I feel that I should state in some detail the reasons for the decision which I have reached.

In the fishing industry, it is a well known phenomenon that shrimp, when disturbed in the water, swim to the surface of the water, while fish when disturbed in a similar way swim to the bottom. Thus, it is obvious that many nets used to catch fish, which usually have a trough section open at the top in advance of the bag section, must be inverted for use in catching shrimp. This is true of the nets which are involved in this case.

Plaintiff's Patent No. 1,498,760 has been given careful consideration, and nothing is found therein which is in any way similar to Defendants' net. It is so clear that infringement of Plaintiff's Patent No. 1,498,760 has not been shown that any discussion will be omitted. It may, however, be pointed out that Plaintiff's trawl in this patent would have to be turned over to resemble in the slightest degree Defendants' trawl, and it is apparent that Plaintiff's trawl is not designed to be thus reversed. To do so would cause the bottom of the collecting section to be left open, and would, of course, render the trawl useless.

The trawl described in Plaintiff's Patent No. 1,485,338 is designed for catching fish and consists of a long bag of unspecified size which is open in one end and closed

in the other. The bag or, as it is called, collecting section, decreases in size from the open end to the closed end. To the open end of the collecting section is attached an advance section or trough which has sides and a bottom but does not have a top. The open end of the collecting section has attached to its top a line of floats which support the top of the trawl on the surface of the water while the bottom of the open end is designed to sink to the bottom of the fishing ground. The sides of the advance section are tapered so that they merge with the bottom of the advance section at its forward edge where is attached a line of weights designed to maintain the advance section on the bottom of the fishing ground. Lines are affixed to the advance section so that the advance section can be raised vertically and folded against the open end of the collecting section effectively closing it and entrapping the fish therein. Thus the advance section fulfills a two-fold duty, that of directing the fish into the collecting section and of closing the open end of the collecting section after the fish are in the net.

The Defendants' trawl on the other hand is designed to catch shrimp and consists of a collecting section similar to that described in Plaintiff's patent and an advance section which is shorter but otherwise similar to that described in Plaintiff's patent. However, Defendants' net is not adapted to be closed. For the reasons noted above, the extended part of the advance section is on the surface of the water, and is not a trough as in the Skrmetti Patent No. 1,-485,338. Also, the weights are placed where the floats are in the Skrmetti Patent, and the floats where the weights are.

The Plaintiff's Patent, No. 1,485,338, covers an improvement on floating trawls, and the question to be determined is, whether the entire trawl which he claims is an improvement or whether only a portion constitutes the improvement, and the remainder a statement of a preexisting trawl which is included in his claims merely for the purpose of making comprehensible a description of his improvement. I am of the opinion that the latter is a correct statement of the construction of the claims of the patent. This conclusion is amply supported by the proceedings in the Patent Office and the patents cited by the examiner.

In Plaintiff's application, his claims numbered one and two were as follows: "1.

A trawling fish seine comprising a bag section, and a trough section arranged in advance of the bag section and adapted to be folded to close the bag section. 2. A trawling fish seine comprising a bag section, a trough section, weights and floats for maintaining the bag and trough sections in extended position and in such manner that the trough section provides an entrance and gathering member for the bag section, and flexible members connected to the sections for trawling and folding the trough section upon the bag section." This claim was rejected by the examiner who stated: "Claims 1 and 2 are rejected on Cheting, 1,103,173, July 14, 1914; 43–9 (Fig. 2), showing a net having a bag section and a trough section which is adapted to be folded over to close the bag section and having weights and floats to hold the parts in extended position." In reply thereto, Plaintiff stated: "The reference cited has been carefully considered in view of the Examiner's application thereof, and applicant contends that the net shown in the reference fails to meet the spirit of applicant's invention. * * * Although the net of the reference is provided with a trough section, the trough section is at all times adapted to maintain an extended position and is never folded to close the mouth of the bag section." Clearly the Plaintiff did not then contend that his patent included either the trough section or the bag section. He made no effort to distinguish between the bag and trough sections of the Cheting patent and his own. The Plaintiff was, in effect, claiming that his invention consisted of a manner of closing the trawl described in his claim by "flexible members" attached to a pre-existing section of the trawl. Thereafter, the file wrapper discloses that the proceedings related solely to the manner of closing the mouth of the bag section of the trawl. The Plaintiff made no further effort to avoid the rejection of his claim to the trough and bag sections of the trawl but all the amendments in his application related to the closing of the mouth of the bag section of the net. I must conclude that the Plaintiff's patent covers only the manner of closing the mouth of the bag section with the trough section and not any part of the net itself. As has already been stated, the manner of closing which is patented by the Plaintiff is no part of Defendants' net and, therefore, the Defendants' net is not an infringement of Plaintiff's patent, or of any of the claims

346

of either of Plaintiff's patents. In fact, the Defendants' net or trawl is constructed with the advance section extending from the top of the bag section instead of from the bottom of the bag section as in the Skrmetti patent. Obviously, the mouth of the bag section on Defendants' trawl could not be closed by lifting the advance section, for such lifting would draw the advance section away from and not toward the mouth of the bag section.

█ A question of evidence was raised during the course of the trial which is not important under the view of the case which the court has taken, for the same conclusion might properly be reached without the evidence received under objection. However, counsel for the Plaintiff was so insistent in his objections to the admission of this evidence that the court feels it should express its views on the question. The Defendants in their answer raised certain defenses which are covered by 35 U.S.C.A. § 69, but failed to state therein the detailed information which this Act requires. However, in separate papers filed in this case, and entitled "Notice to Plaintiff or Attorney furnished under Section 69, Title 35, U.S. Code Annotated", the Defendants have given all the information required to be given under the above statute. The gist of the Plaintiff's objection is not that he did not receive sufficient notice but that the complete notice was not contained in the answer itself. The purpose of the requirement of notice has been frequently stated by the courts and is for the purpose of guarding the holder of a patent from unfair surprise and to limit the issues to be tried. However, the filing of an answer and giving the notice in a separate paper fulfill the purpose of the statute and are sufficient compliance therewith and the cases so hold. Midwest Mfg. Co., Inc., v. Staynew Filter Corporation, D.C., 12 F.Supp. 876. From the evidence received under this objection the court has found that the Defendant, Albert Anderson, has been making since 1914 a trawl identical with the one he now makes, and that such trawls were in common use along the gulf coast of Mississippi prior to the year 1916. It is evident that this alone is sufficient to determine the present controversy inasmuch as such prior public use would invalidate the Plaintiff's patent 'insofar as it relates to the features of the Defendants' trawl.

Plaintiff's Bill of Complaint is dismissed.